IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Richard David Ridley, | ) | C/A No.: 1:15-1612-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| John McGill, Director DMH; Holly | ) | REPORT AND RECOMMENDATION |
| Scaturo, Director SVPTP, Kimberly | ) | |
| Poholchuk, Program Coordinator, | ) | |
| Warden Stevenson, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Richard David Ridley ("Plaintiff"), proceeding pro se and in forma pauperis, is committed to the custody of the Sexually Violent Predator Treatment Program ("SVPTP") of the South Carolina Department of Mental Health ("SCDMH") pursuant to the Sexually Violent Predator Act, S.C. Code Ann. § 44-48-10 through § 44-48-170 ("SVPA").  He brings this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by SCDMH Director John Magill, SVPTP Director Holly Scaturo, SVPTP Deputy Director Kimberly Poholchuk, and Broad River Correctional Institution ("BRCI") Warden Stevenson (collectively "Defendants").[1]

---

[1] The SCDMH and the South Carolina Department of Corrections ("SCDC") have entered into an interagency agreement whereby SVPTP residents are housed in a segregated location within BRCI. *See, In re Treatment and Care of Luckabaugh*, 568 S.E.2d 338, 345 (S.C. 2002). The interagency agreement provides that the Edisto and Congaree units ("SVPTP units") of BRCI will be used to house sexually violent predators. *Id*. Under the agreement, SCDMH retains all control, care, and treatment aspects inside the SVPTP units, including internal guards, routine maintenance, and sanitation. *Id*. SCDC provides outside security, meals, laundry services, and chaplain services.

This matter comes before the court on Defendants' motion for summary judgment. [ECF No. 37]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 38]. The motion having been fully briefed [ECF Nos. 40, 43, 44], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant Defendants' motion for summary judgment.

I.    Factual Background

Plaintiff was voluntarily civilly- committed to the SVPTP on August 25, 2014. [ECF No. 37-7]. All SVPTP residents are provided with two options regarding treatment: (1) the resident may participate in active treatment, which consists of intensive group and personal therapy, including examination and discussion of past sexually-offending behavior and self-disclosure about thoughts and feelings related to that behavior [ECF No. 35-5]; or (2) the resident may elect for the general treatment track, which does not require admitting or discussing committing past sexual offenses and which focuses solely on current behavior [ECF No. 37-6]. Residents are not required to choose either treatment track and may refuse participation or withdraw consent to a treatment track at any time. [ECF No. 37-5 at 4, 37-6 at 3]. Plaintiff participates in active treatment and has not requested to withdraw consent. [ECF No. 37-3 at ¶ 2].

In his complaint, Plaintiff alleges his First Amendment rights were violated because (1) he was allegedly forced to sign a contract for treatment, (2) he must participate in treatment, (3) he must incriminate himself during treatment, and (4) he cannot speak freely. [ECF No. 1 at 3]. Plaintiff alleges violations of his Fourth Amendment rights because his room was searched three times between October 14, 2014, and December 17, 2014. *Id*.

Plaintiff also asserts he is housed in unconstitutional conditions of confinement. Specifically, Plaintiff claims he is not allowed to have a television or electric razor and may not purchase Tylenol from the canteen. *Id*. at 3–4. Plaintiff alleges the food served contains debris, including insects and a razor blade. *Id*. at 4. He claims the SVPTP's double-bunking policy is unconstitutional and alleges he has inadequate access to legal resources. *Id*.

Plaintiff alleges violations of his Fourteenth Amendment rights because the amount of group treatment he receives is inadequate, therapeutic room restriction is used as punishment, and corporal punishment is used by staff against the residents. *Id*. at 4–5. Plaintiff also alleges an equal protection violation because residents are placed in color-coded jumpsuits. *Id*. at 5. Finally, Plaintiff alleges the SVPA is unconstitutional because it violates the double jeopardy and ex-post facto clauses, as criminal sexual conduct, third degree, is considered a violent offense under the SVPA. *Id*.

II.    Discussion

A.    Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v.*

*Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

       B.      Analysis

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. *Youngberg v. Romeo,* 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement bear some reasonable relation to the purpose for which persons are committed. *See Seling v. Young,* 531 U.S. 250, 265 (2001); *Youngberg,* 457 U.S. at 324. In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. *Youngberg,* 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. *Id.* at 322.

       1.      First Amendment Claims

          a.      Treatment

Although civilly-detained persons retain their First Amendment rights, there is nothing unconstitutional about reasonable restrictions being applied by supervisory personnel to those First Amendment Rights to maintain order and the security of the institution. *Patten v. Nichols*, 274 F.3d 829, 843 (4th Cir. 2001) (holding that defendant's

actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional").

Plaintiff contends his First Amendment rights were violated because he was allegedly forced to sign a contract for treatment, must participate in treatment, must incriminate himself during treatment, and he cannot speak freely. Defendants argue that Plaintiff may withdraw his consent to active treatment at any time. [ECF No. 37-2 at 10]. Plaintiff appears to clarify in his response that if he were to refuse to participate in treatment, he may be detained indefinitely. [ECF No. 43-1 at 2]. Plaintiff also argues that his treatment plan and/or criminal history is incorrect. *Id*. To the extent Plaintiff disagrees with his criminal history, he had an opportunity to make arguments at his commitment hearing. [ECF No. 37-7]. Instead, Plaintiff waived his rights to a jury trial regarding his commitment as a sexually-violent predator and consented to voluntary commitment. *Id*.

Plaintiff is not required to participate in the program, but he is subject to the restrictions on privileges if he chooses not to participate. [ECF No. 37-10]. The purpose of the program is to treat individuals for the sexually violent proclivities to enable them to return to the general public. [ECF No. 37-5]. Plaintiff has not shown that Defendants' decisions depart so substantially from accepted professional judgment, such that they cannot be based on professional judgment. *Youngberg,* 457 U.S. at 324.

b.    Communication with his cousin

Plaintiff also claims his First Amendment rights have been violated because he is not allowed to correspond with his cousin, who is incarcerated in the custody of the SCDC. [ECF No. 43-1 at 3–4]. Both SCDC and SVPTP have policies prohibiting SCDC

inmates and SVPTP residents communicating unless they are immediate family members. [ECF Nos. 44-3, 44-4].

Defendants argue that these policies are in place for the safety of the inmates, residents, and staff of each institution. [ECF No. 44 at 4]. The potential danger for inmates/residents to plan a physical assault or smuggle contraband is a primary concern. *Id.* "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Plaintiff has failed to show that such policies depart so substantially from accepted professional judgment that they cannot be based on professional judgment. *Youngberg,* 457 U.S. at 324.

2.    Searches

Plaintiff alleges violations of his Fourth Amendment rights because his cell was searched three times in three months. Defendants argue that searches of residents' rooms for contraband are a necessary part of confinement, even in a treatment program, to maintain the security and safety of the environment. [ECF No. 37-8]. Contraband is "[a]ny article which proves to be dangerous, to be hazardous, or to interfere with the treatment goals of the program . . . ." *Id.* Examples include weapons, alcohol, excessive items of any kind, or unapproved or inappropriate magazines and pictures. *Id.* Plaintiff has failed to show that such policies depart so substantially from accepted professional judgment that they cannot be based on professional judgment. *Youngberg,* 457 U.S. at 324. Therefore, deference should be given to Defendants.

### 3.    Access to Courts

#### a.    Westlaw

Plaintiff argues one hour of Westlaw database legal research is insufficient based upon the holding of *Williams v. Leeke*, 584 F.2d 1336 (4th Cir. 1978). [ECF 43-1 at 5–6]. The court in *Leeke* held "meaningful legal research on most legal problems cannot be done in forty-five minute intervals . . . . At the least, severe restrictions on library time can be justified only if trained research assistants are made available to guide the prisoner's research efforts." *Leeke*, 584 F.2d at 1340. Defendants argue that *Leeke* is distinguishable from the instant case because Plaintiff is provided an hour of online research through a Westlaw subscription, as compared to 45-minute intervals of searching through a law library in *Leeke*. Defendants argue that "[t]he advent of online legal research has cut down on research times considerably, and Plaintiff is now able to search through numerous more topics, keyword searches, and cases in the time provided as compared to what was possible in 1978 when *Leeke* was established." [ECF No. 44 at 5]. The undersigned agrees with Defendants. Additionally, Plaintiff has failed to show how he has been injured by the limit on legal research. To state a cognizable claim for denial of meaningful access to the courts, a plaintiff must allege a specific actual injury resulting from the alleged denial. *Lewis v. Casey,* 518 U.S. 343, 351–52 (1996); *Cochran v. Morris,* 73 F.3d 1310 (4th Cir. 1996);  *see also Christopher v. Harbury,* 536 U.S. 403, 414–15 (2002) (stating that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong").

b.    DSM-5

For the first time, Plaintiff alleges in his response that Defendants have violated his constitutional rights by denying him access to the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition ("DSM-5"). [ECF No. 43-1 at 6–7]. Plaintiff may not argue a new claim in a response to a summary judgment motion. *See S. Walk at Broadlands Homeowner's Assn, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).Nevertheless, the undersigned has considered Plaintiff's arguments.

Defendants argue that the DSM-5 is intended for use by trained clinicians who already have an understanding of the complexities of psychiatric disorders, which the DSM-5 does not delve into comprehensively. [ECF No. 44-5 at ¶ 5]. In fact, the DSM-5 states: "Use of the DMS-5 to assess for the presence of a mental disorder by nonclinical, nonmedical, or otherwise insufficiently trained individuals is not advised." *Id*. According to Kelly Gothard, SVPTP Clinical Chief Psychologist, books in the SVPTP are reviewed for therapeutic appropriateness. *Id*. at ¶ 6. Any books on psychiatric illness or treatment are carefully reviewed by staff to determine the appropriateness for each resident's individual treatment plan. Gothard states that such diagnostic or assessment information is prohibited due to the potential for misuse and the potential for residents to use it to aid them in malingering or masking symptoms, which would interfere with clinicians' ability to appropriately treat the residents. *Id*. at ¶ 7. For his SVPTP review hearings, Plaintiff has assigned legal counsel, who has access to any psychiatric or legal material required for Plaintiff's commitment defense. *Id*. at ¶ 11.

9

Plaintiff has failed to demonstrate that Defendants' restrictions on access to the DSM-5 substantially depart from accepted professional judgment, practice, or standards. Further, Plaintiff's civil commitment attorney could access this information if it is needed for Plaintiff's defense at his next review hearing.

### 4.    Conditions of Confinement

#### a.    Double-Bunking

Scaturo submitted the SVPTP double-bunking policy, which states the non-exclusive list of factors considered for determining which residents may be double-bunked when necessary. [ECF No. 37-11 at 1–2]. All placement decisions are made by the treatment teams. *Id*. Scaturo also notes that Plaintiff is not currently and has never been double-bunked, so he has no standing to bring a claim. [ECF No. 37-3 at ¶ 11]. Plaintiff does not dispute Scaturo's affidavit and provides no argument regarding this claim. Plaintiff fails to show that his constitutional rights have been violated related to double-bunking, as he has never been double-bunked.

#### b.    Corporal Punishment

Although Plaintiff's complaint alleges he has been subject to corporal punishment, Scaturo states that no staff member has subjected Plaintiff to corporal punishment. *Id*. at ¶ 14. Plaintiff does not dispute Scaturo's affidavit and provides no argument regarding this claim. Therefore, Plaintiff fails to show that Defendants have used excessive force against him.

c.    Food

Plaintiff claims that the food "almost always has some kind of garbage in it." [ECF No. 1 at 4]. BRCI provides food to SVPTP residents. Stevenson testified that all food is approved by a nutritionist. [ECF No. 37-4 at ¶ 9]. A food service supervisor monitors the preparation of each tray before it is placed in a heated cart that is locked and delivered to SVPTP staff. *Id*. According to Stevenson, he is aware of one instance where a razor was found in food, but it was not Plaintiff's food. [ECF No. 37-4 at ¶ 9].

When meals and drinks arrive at the SVPTP unit, they are logged into a Resident Meal Count form. [ECF No. 44-6 at ¶ 1]. This chart identifies the number of meals provided at breakfast, lunch, and dinner. *Id*. If a complaint is made by a resident about a meal or drink, the staff member notes the day, unit, and the corrective action taken. *Id*. at ¶ 2. If a single resident makes a complaint, or the complaint is deemed minor in nature, the food tray or drink is replaced and the BRCI kitchen staff is notified. *Id*. at ¶ 3. If numerous residents make similar complaints, or the complaint is deemed serious, such as urine, feces, or bugs in the food/drink, the SVPTP contacts the BRCI Nutritional Services Manager, who investigates and reports on any corrective action necessary. *Id*. at ¶ 4.

Plaintiff has complained to the SVPTP staff about food and drink. For instance, on March 23, 2015, Plaintiff complained about particles in juice, but he failed to immediately report the incidents to staff.  [ECF No. 43-5 at 19]. Unless the resident reports the incident when it occurs so that the trays, food, and/or drink can be inspected and photographed/documented, there is no way to verify the subsequent report that something foreign was in the food. [ECF No. 44-6 at ¶ 5]. The request to staff submitted

11

by Mr. Ridley on August 23, 2015, involved a container with juice smelling bad. [ECF No. 43-5 at 22]. It was noted by staff that the container had a sour smell, it was cleaned, and new juice was provided. *Id.*; ECF No. 43-6 at ¶ 6. Plaintiff submitted a request to staff on September 17, 2015, involving another resident's alleged complaint about feces on their meat on September 14, 2015. [ECF No. 43-5 at 23]. However, the Resident Meal Count form indicated the resident complained to staff that the meat was "stale." [ECF Nos. 44-6 at ¶ 7; 44-7]. There was no report by any resident or documentation that the meat "tasted like feces," and there was no feces found on any trays. *Id.* On October 4, 2015, Plaintiff submitted a request to staff documenting that bad-tasting meat was reported by other residents to staff on October 3, 2015. [ECF No. 43-5 at 21]. The incident was recorded and the trays were replaced by BRCI Nutritional Services. [ECF No. 44-7 at 2].

Only one of the incidents regarding food related to Plaintiff, and it was addressed. Plaintiff has not alleged claims about the food sufficient to state a constitutional violation in light of Defendants' undisputed evidence.

d.     Therapeutic Room Restriction

Plaintiff alleges Defendants' use of therapeutic room restriction ("TRR"), confinement to one's room for 23 hours of the day, is unconstitutional. Plaintiff admits that he has never been subject to TRR. [ECF No. 43-1 at 15]. Therefore, Plaintiff lacks standing to bring such a claim.

e.    Canteen and Other Privileges

Plaintiff complains that there are items that he is not allowed to purchase in the canteen and he is limited in how much he can spend. The SVPTP Behavior Management Policy provides rules for residents regarding their behavior while they are within the SVPTP. [ECF No. 37-9]. In addition, the SVPTP has a Unit Privilege System that provides residents "opportunities to utilize skills in negotiating unit life and exercise decision-making skills that reflect progress in treatment." [ECF No. 37-10]. Residents enter the SVPTP at red level and have the opportunity to progress to green or blue level by demonstrating positive behavior and participating in treatment. *Id*. at 1–2. Disciplinary infractions or negative behavior can result in a loss of level. *Id*. at 4.

Plaintiff alleges he cannot purchase a television. Residents on blue level may purchase televisions if they have the funds, but Plaintiff is on green level. [ECF No. 37-3 at ¶ 5]. Plaintiff is also limited in the amount he can spend at the canteen based on his color level. [ECF No. 37-10].

Plaintiff alleges he is not allowed to purchase an electric razor. No residents are allowed to purchase electric razors because of safety precautions. [ECF No. 37-3 at ¶ 4]. Residents may check out razors three times per week. *Id*.

Plaintiff alleges he is not allowed to purchase aspirin. Scaturo stated that no residents are allowed to purchase medication, but they can submit a medical request form to receive such medicine. *Id*. at ¶ 6. Residents are prohibited from purchasing medication because of the potential for hoarding, trading, or overdose. *Id*.

Plaintiff has not shown how any of these regulations are unconstitutional.

13

4.    Equal Protection Claims

Plaintiff complains that SVPTP residents must wear bright yellow jumpsuits when transported to and from the facility. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id*.

A prisoner[2] can make an equal protection claim if he is singled out as an individual for "arbitrary and irrational treatment," with no rational basis for such disparate treatment, even if one is not being discriminated against as a member of a certain group. *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005). However, when equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. *Veney v. Wyche*, 293 F.3d 726, 730–32 (4th Cir. 2002). In such instances, a prisoner claiming an equal protection violation must allege facts demonstrating "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful

---

[2]Although Plaintiff is not a prisoner, civil detainees should be treated as well as prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

14

discrimination," and the court must determine whether the disparate treatment is reasonably related to any legitimate interest. *Id*.

Here, Plaintiff has not shown how he personally has been singled out for intentional or purposeful discrimination, as all SVPTP residents must wear yellow jumpsuits when they are transported. [ECF No. 37-3 at ¶ 15]. Plaintiff alleges that other residents are also forced to wear colored jumpsuits depending on their behavior. [ECF No. 43-1 at 18]. However, Plaintiff has never been forced to wear another color jumpsuit [ECF No. 37-3 at ¶ 15], and he does not have standing to bring a claim on behalf of other residents.  Therefore, Defendants are entitled to summary judgment on these claims.

### 5.    Double Jeopardy/Ex Post Facto

Courts have consistently held that the SVPA is a civil, non-punitive scheme that does not violate the double jeopardy or ex-post facto clauses. *See, e.g.*, *Michau v. Charleston County, S.C.*, 434 F.3d 725, 727 (4th Cir. 2006) (citing *In re Matthews,* 550 S.E.2d 311, 316 (S.C. 2001) (concluding that the SVPA is civil rather than criminal and that confinement under the SVPA is non-punitive); *Kansas v. Hendricks,* 521 U.S. 346, 365–69 (1997) (concluding that Kansas's Sexually Violent Predators Act established civil rather than criminal detention scheme)).

Plaintiff also claims that he has not had a mental evaluation since August 2013. [ECF No. 43-1 at 20].  Gothard stated in her affidavit that Plaintiff has regular contact with trained clinicians, psychologists, and has a right under the SVPA to request an independent evaluation if he does not believe his SCDMH evaluation is accurate. [ECF No. 44-5 at ¶ 11]. Plaintiff has not shown that the SVPA violates his constitutional rights.

15

6.    Eleventh Amendment Immunity

Defendants argue that, to the extent Plaintiff sues them for monetary damages in their official capacities, they are immune from suit.[3] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Here, Defendants are agents of the state and are therefore immune from suit for monetary damages in their official capacities.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [ECF No. 37] be granted. If the district judge accepts this recommendation, Plaintiff's motion for a temporary restraining order and/or preliminary injunction [ECF No. 54] will be rendered moot.

---

[3] Defendants are sued in their official and personal capacities.

16

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 27, 2016                                            Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).